## UNITED STATES BANKRUPTCY COURT
### FOR THE
### WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JASMIN HRUSTANOVIC | ) | CASE NO.  18-10737(1)(7) |
| | ) | |
| _____ Debtor(s) | ) | |
| | ) | |
| JASMIN HRUSTANOVIC | ) | AP NO.  19-01017 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ONEMAIN FINANCIAL GROUP, LLC | ) | |
| | ) | |
| | ) | |
| _____ Defendant(s) | ) | |

### MEMORANDUM-OPINION

This matter is before the Court on the Motion for Summary Judgment filed by Defendant OneMain Financial Group, LLC ("OneMain") against Plaintiff Jasmin Hrustanovic ("Plaintiff"). The Court considered the Motion for Summary Judgment filed by OneMain, the Response to the Motion for Summary Judgment filed by the Plaintiff, and the Reply to the Response filed by OneMain.  For the following reasons, the Court will **GRANT** the Motion for Summary Judgment of OneMain.

### JURISDICTION

This Court has jurisdiction over this contested matter.  28 U.S.C. § 1334(b).  Venue for this matter is proper in this District.  28 U.S.C. § 1409.  This is a core proceeding and the Court is

authorized to enter a final order adjudicating this matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The parties have consented to entry of final judgment by this Court on all claims presented.

## UNDISPUTED MATERIAL FACTS

The parties agree that the material facts of this matter are not in dispute. The Court therefore, incorporates herein, the following undisputed facts from the parties' Motion for Summary Judgment and the Response to the Motion for Summary Judgment.[1]

On June 27, 2016, the Plaintiff borrowed money from OneMain and granted OneMain a first priority lien on a 2005 Chevrolet, which was properly perfected by OneMain. Within two months of obtaining the loan, the Plaintiff informed OneMain he had traded in his 2005 Chevrolet and sought to replace the lien with a lien on a 2010 Mercedes. OneMain released the lien on the 2005 Chevrolet, and recorded a lien on the Plaintiff's 2010 Mercedes with the Warren County Clerk's Office. A few months later, the lien on the 2010 Mercedes was released and replaced with a recorded lien on a 2003 Mercedes E500W (the "Vehicle").

The Plaintiff filed a Chapter 7 bankruptcy case in this Court on July 31, 2018. *See* Bankr. Doc. #1. On August 1, 2018, the Court entered the Official Form 309A (Bankr. Doc. #5-2), in which paragraph 10 informs creditors that there appears to be no assets for creditors in the Plaintiff's bankruptcy case, and, therefore, creditors were not to file a proof of claim.

Through the Plaintiff's bankruptcy Schedules, the Plaintiff asserted OneMain was undersecured, not unsecured because the Vehicle's value was approximately $7,500 for a purported

---

[1]Plaintiff stipulated that the transcripts of the communications between Plaintiff and the representatives of OneMain attached to the Becker Declaration, an exhibit to OneMain's Motion for Summary Judgment, are correct recitations of the parties' conversations. *See*, Bankr. Doc. #21, p.1.

indebtedness of $9,218 (Bankr. Doc. #24 at 20 and 31). Through the Statement of Intention of Individuals Filing Under Chapter 7 (Official Form 108), the Plaintiff noted his intent to surrender the property securing OneMain's debt. (Bankr. Doc. #24, p.49).

The Plaintiff received a discharge entered by this Court on November 20, 2018 (the "Discharge Order") (Bankr. Doc. #33). Notice of the Discharge Order was dated November 22, 2018 (Bankr. Doc. #34). OneMain does not dispute that it had actual knowledge of the Discharge Order prior to the events discussed below. OneMain also does not dispute the Plaintiff's assertion that the Plaintiff did not reaffirm his otherwise discharged debt to OneMain. (Doc. #3, ¶ 26).

On April 22, 2019, the Plaintiff filed his Amended Motion to Require OneMain Financial Group, LLC to Appear and Show Cause (the "Contempt Motion") (Bankr. Doc. #48), seeking certification of a putative class, and requesting that the Court order OneMain to appear and show cause why it should not be held in contempt of the Court's Discharge Order for purportedly refusing to provide the Plaintiff a lien release as to the inoperable Vehicle. Following a status conference before this Court, the Plaintiff filed the First Amended Complaint on July 2, 2019 (hereinafter referred to as "the Complaint"). The Complaint admits OneMain's *in rem* rights in the Vehicle survived bankruptcy as "OneMain's lien was not avoided or eliminated in bankruptcy." Compl. ¶ 32. OneMain filed its Answer to the Complaint on July 31, 2019. (Doc. #6).

The Complaint alleges a communication between the Plaintiff and a OneMain branch employee during which the Plaintiff was directed to contact OneMain's Central Bankruptcy Processing Unit ("CBP"). Compl. ¶ 37 (referencing OneMain's "centralized bankruptcy servicing center"). Regardless of how it occurred, the Plaintiff successfully reached out to CBP, the unit at OneMain designated to handle communications with and about bankrupt borrowers.

After a review of its records, OneMain located five recordings of calls between CBP and the Plaintiff.  Copies of those audio recordings were provided to Plaintiff's counsel on April 26, 2019. Transcripts of those recordings have been produced to Plaintiff and are attached to the Becker Declaration as Exhibits 1-5.  During those conversations:

> OneMain's representatives regularly and properly informed the Plaintiff that the call would be recorded.  Those representatives also took steps to identify the caller. OneMain informed the Plaintiff that it would not discuss his situation with third-parties without his permission.

> OneMain's representatives properly explained to the Plaintiff that OneMain's lien on the Vehicle survived the bankruptcy discharge and informed the Plaintiff that he was not responsible for the balance of the loan above the value of the Vehicle.  *See* Ex. 2 at 1.

> In accord with OneMain's policies and guidelines, the Plaintiff was provided a disclaimer informing him that he was not personally liable for the debt but that OneMain still had a lien on the Vehicle.  *See* Ex. 2 at 1; *see also* Ex. 4 at 1.

> OneMain provided options to the Plaintiff: (1) obtain a mechanic's estimate and/or photos to demonstrate that the Vehicle was inoperable as represented over the phone and not worth repairing; or (2) sell the Vehicle to a third party; or (3) obtain the salvage value of the Vehicle and either provide OneMain with notice that a salvage yard may speak to OneMain regarding the Vehicle, so as to have the salvage yard make an offer to OneMain, or submit the salvage yard's offer himself with pictures and other facts demonstrating the reasonableness of the offer; or (4) make an offer to retain the Vehicle if that was the Plaintiff's desire.  Ex. 2 at 1-2, Ex. 3 at 2, and Ex. 5 at 1-3.

OneMain's policies and procedures for its CBP employees includes a method for determining whether OneMain will take possession of a vehicle on which it has a lien after a borrower has filed bankruptcy, received a discharge, and stated he or she will not reaffirm the debt.  This analysis uses relevant information such as whether the vehicle is operable and if not, what would be required to repair it.  The transcripts with Plaintiff reveal that OneMain requested this information in an effort

to value its *in rem* claim. After obtaining this information, OneMain determined it would not repossess the Vehicle. Becker Declaration ¶¶ 12 and 13.

It is not OneMain's policy to refuse to release surviving *in rem* liens until a discharge debt is paid in full. Furthermore, OneMain did not refuse to release the *in rem* lien until Plaintiff paid the discharged debt in full. Becker Declaration ¶ 16.

## LEGAL ANALYSIS

OneMain seeks an Order granting summary judgment in its favor on all claims asserted against it in Plaintiff's Amended Complaint under Fed. R. Civ. P. 56(c), made applicable to adversary proceedings through Bankr. R. Civ. P. 7056. Under that Rule, the Court must grant summary judgment to the moving party if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. A genuine issue of material fact exists when there are "disputes over facts that might effect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must demonstrate to the Court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Thereafter, the nonmovant "must come forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), quoting Fed. R. Civ. P. 56(e). Where the record taken as a whole could not lead a rational fact finder to rule for the nonmovant, there is no genuine issue for trial. *Id.* Here, OneMain has established that there is insufficient evidence to establish essential elements of Plaintiff's claims against it entitling it to summary judgment as a matter of law. The Plaintiff has failed to come forward with specific facts

-5-

showing there is a genuine issue for trial on any of the claims asserted in the Complaint. Therefore, summary judgment is appropriate on all claims asserted against OneMain by the Plaintiff.

On July 2, 2019, Plaintiff filed his Amended Complaint individually and on behalf of a class of persons seeking class certification and asserting three claims against OneMain.[2] Count I asserts a claim for willful violations of the discharge injunction, 11 U.S.C. § 1328(a) and 11 U.S.C. § 524 *et seq.* Count II seeks imposition of preliminary and final injunctive relief enjoining OneMain from refusing to release liens on discharged debts unless the Plaintiff pays on the discharged loans. Count III seeks declaratory relief in the form of a declaration that OneMain has acted unlawfully, as well as a declaration that OneMain's conduct constitutes an abuse of process. In addition to class certification, Plaintiff seeks damages for the violations asserted in the Complaint.

    A.    <u>There Is Insufficient Evidence that OneMain Violated the Discharge Injunction</u>.

In Count I of the Complaint, Plaintiff asserts that following entry of the Order of Discharge in his no asset Chapter 7 case, OneMain refused to release its properly perfected lien on Plaintiff's 2003 Mercedes E500W. Plaintiff did not reaffirm the debt and had indicated his intent to surrender the Vehicle. In Plaintiff's Schedules, OneMain was classified as undersecured, as the Vehicle's value was approximately $7,500 with an unsecured claim of $1,718.

The transcripts of the recorded conversations between OneMain's representatives and the Plaintiff regarding the Vehicle and the request by the Plaintiff that the lien be released establish the following:

---

    [2]The parties agreed to stay all discovery concerning class certification pending the Court's ruling on OneMain's Motion for Summary Judgment.

1.   OneMain told the Plaintiff that it's lien on the Vehicle survived the discharge and that Plaintiff was not responsible for the balance of the loan owed on the Vehicle;

2.   OneMain provided Plaintiff with the following options:

(a) Plaintiff could obtain a mechanic's estimate and/or provide further evidence that would demonstrate that the Vehicle was inoperable and not worth repairing, as Plaintiff claimed; (b) sell the Vehicle to a third party; or (c) obtain the salvage value of the Vehicle and either provide OneMain with notice that a representative of a salvage yard could speak with OneMain about the Vehicle, so the salvage yard could either make an offer to OneMain or Plaintiff could submit the salvage yard's offer for the Vehicle with photos or other evidence establishing the value of the Vehicle or the reasonableness of the offer, or Plaintiff could make an offer on the Vehicle if he so chose.

According to OneMain, had Plaintiff chosen any of these options, the lien would have been released. There is no evidence based on the record before the Court that OneMain's representative informed Plaintiff that the lien would only be released upon payment to OneMain of the unsecured portion of his debt which had been discharged in the Chapter 7 case. OneMain's representatives clearly presented Plaintiff with several options, and had Plaintiff chosen any of the options, the lien would have been released.

Section 524(a)(2) of Title 11 provides that a discharge granted to a debtor under Chapter 7 operates as an injunction against the continuation of an action to collect a discharged debt as a personal liability of the debtor. The provisions of this section "apply only to the personal liability of the debtor, so they do not affect an otherwise valid prepetition lien on property." COLLIERS ON BANKRUPTCY, ¶ 524.02 (Richard Levin & Henry J. Somer eds. 16th ed).

This Court has the power to sanction a creditor who violates the discharge injunction by finding the creditor in contempt of court. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23

(6th Cir. 2000). However, the debtor must prove a violation of the discharge injunction by clear and convincing evidence. *In re Bentley*, 607 B.R. 889 (Bankr. E.D. Ky. 2019), citing *In re Joseph*, 584 B.R. 696, 702 (Bankr. E.D. Ky. 2018). The Supreme Court recently determined that a debtor seeking to hold a creditor in contempt for violation of the discharge injunction must show that "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggert v. Lorenzen*, ___ U.S. _____, 139 S. Ct. 1795, 1801 (2019). There must be no "fair ground of doubt" as to whether the discharge order barred the alleged contemptuous conduct by the creditor. *Id.* at 1804.

Plaintiff contends that OneMain acted in "willful disregard of the discharge injunction" by failing to release its lien on the Vehicle, after it had decided not to repossess it. In support of this claim, Plaintiff refers to the exchange by Plaintiff and a OneMain representative where Plaintiff stated, "But can you guys release the lien?" ECF Doc. 7-1, Becker Declaration, pg. 12. OneMain responded, "If an offer is made and it is accepted by management, yes – – they won't just release the lien on the Vehicle, no." Despite Plaintiff's claims, this exchange does not establish that OneMain willfully violated the discharge injunction.

Plaintiff relies on *Pratt v. GMAC*, 462 F.3d 14 (1st Cir. 2006), in support of his claims that OneMain violated the discharge injunction. In *Pratt*, the debtor repeatedly requested the creditor GMAC, to either repossess his inoperable vehicle or release the lien on the vehicle. According to the First Circuit's recitation of the facts, "GMAC refused to release its lien unless and until the outstanding loan balance was paid in full." *Id.* at 16. The court found that state law permitted GMAC to refuse to release the lien unless and until the outstanding loan balance was paid and that its actions were not in bad faith. However, under the circumstances, the court determined that

GMAC's actions were "objectively coercive." *Id.* at 19. Since the vehicle was "essentially worthless" there was no reasonable prospect that it would generate future sale proceeds to which GMAC's lien would attach. The Court reasoned that GMAC's actions, effectively eliminated the debtor's ability to surrender the property and be discharged of the debt.

The *Pratt* court specifically stated that the "line between forceful negotiation and improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts." *Pratt*, 462 F.3d at 19, citing *Jamo v. Katahdin Fed. Credit Union, (In re Jamo)*, 283 F.3d 392, 399 (1st Cir. 2002). While this Court has difficulty reconciling the *Pratt* court's finding that the creditor did not act in bad faith, yet its actions were objectively coercive, the facts of the case at bar do not support a finding of objective coercion by OneMain.

In a case factually similar to the case at bar, *In re Bentley*, 607 B.R. 889 (Bankr. E.D. Ky. 2019), a debtor, relying upon the *Pratt* decision, claimed a creditor who refused to release its lien on a nearly valueless vehicle, after debtor's discharge, had violated the discharge injunction. In *Bentley*, the debtor called the creditor and advised that the vehicle was old and "totaled." As in this case, the creditor told the debtor he was not responsible for the balance of the loan and asked that debtor make some kind of an offer for the release of the lien and that if the vehicle was "junk value" then debtor should have a salvage yard call the creditor and provide a "scrap value offer" and creditor would consider the offer to release the lien and if approved, management would release it. The parties had several discussions, including one where debtor stated he would have someone at the salvage yard call the creditor, however, there was no follow up on this discussion. Instead, the debtor moved to reopen the bankruptcy case to pursue an action for violation of the discharge injunction. *Id.* at 893.

-9-

Judge Wise held that the creditor's actions in *Bentley* did not violate the discharge injunction because its conduct was not "objectively coercive." The Court distinguished the *Pratt* decision, and relied on *In re Canning*, 706 F.3d 64 (1st Cir. 2013), in which the First Circuit clarified its opinion in *Pratt*. In *Canning*, the debtors filed a Chapter 7 case and gave notice of their intent to surrender their residence to the creditor. The lender proposed several alternatives to the debtor. The debtor, however, refused to consider any of the creditor's options, nor could debtors explain to the court why any of the creditor's proposals were not feasible. Given the creditor's state law rights, the creditor's actions were not objectively coercive. The Court in *Canning* emphasized that "a secured creditor's state law right" cannot be altered, unless it is shown that "those rights are relied upon to coerce payment of a discharged debt." *Canning*, 706 F.3d at 71-72.

Here, Plaintiff scheduled the Vehicle as having value of at least $1,500 and therefore recognized that it was not worthless. OneMain like the creditors in *Canning* and *Bentley*, did not demand that Plaintiff pay the full balance owed on the loan, but gave Plaintiff several options whereby he could present an option to OneMain or have someone from the salvage yard make an offer for the Vehicle. There is no evidence before the Court that OneMain did anything coercive or made any attempt to collect any portion of the discharged debt.

As noted by Judge Wise in *Bentley*, both *Canning* and *Pratt* relied on the facts presented in each specific case in determining whether coercive behavior occurred. The facts here are very similar to those presented in *Bentley*. OneMain explained that Plaintiff was not liable for the debt discharged in the Chapter 7 case, but that the lien rights under state law still existed. Plaintiff was presented with several options whereby the lien would be released. The record does not establish

that OneMain's actions violated the discharge injunction, nor were they objectively coercive.  Thus, summary judgment is appropriate on Count I of the Complaint.

Since there was no violation of the discharge injunction under Count I, there is no basis to grant relief to Plaintiff under Count II and Count III of the Amended Complaint, whereby Plaintiff seeks preliminary and final injunctive relief and declaratory relief regarding OneMain's conduct.  These Counts cannot survive once it has been determined that there was no violation of the discharge injunction by OneMain.  Accordingly, summary judgment in favor of OneMain on all claims of the Complaint must be **GRANTED**.

In addition to the individual claims of the Plaintiff, Plaintiff also sought class action status on behalf of similarly situated individuals regarding OneMain's lien release procedures.  Because no discharge injunction violation occurred, the proposed class representatives' individual claims lack merit, the request to certify this matter as a class action is therefore moot.  *See In re Bentley*, 607 B.R. at 898 and cases cited therein.  Accordingly, summary judgment in favor of OneMain is appropriate on all Counts of Plaintiff's Complaint.

### CONCLUSION

For all of the above reasons, the Defendant's Motion for Summary Judgment must be **GRANTED**.  An Order incorporating the findings herein accompanies this Memorandum-Opinion.

Joan A. Lloyd
United States Bankruptcy Judge

Dated:  March 2, 2020

-11-

# UNITED STATES BANKRUPTCY COURT
## FOR THE
## WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JASMIN HRUSTANOVIC | ) | CASE NO.  18-10737(1)(7) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| JASMIN HRUSTANOVIC | ) | AP NO.  19-01017 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ONEMAIN FINANCIAL GROUP, | ) | |
| LLC | ) | |
| | ) | |
| Defendant(s) | ) | |

## ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion for Summary Judgment of Defendant OneMain Financial Group, LLC, be and hereby is, **GRANTED**.  There are no genuine issues of material fact and OneMain Financial Group, LLC is entitled to judgment as a matter of law on all claims asserted in the Complaint.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  March 2, 2020